# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1738
_____

| | |
|---|---|
| William T. Gilbert, III, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| Monsanto Company, | * |
| | * |
| Defendant - Appellee. | * |

_____                    Appeals from the United States
                               District Court for the Eastern
No. 99-1873                    District of Missouri.
_____

| | |
|---|---|
| William T. Gilbert, III, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Monsanto Company, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted:  November 15, 1999

Filed:  June 20, 2000
_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

William T. Gilbert, III appeals from the district court's judgment on his action to enforce his settlement agreement with Monsanto Company. Gilbert argues that the district court improperly denied him attorney's fees and back pension benefits following Monsanto's breach of the settlement agreement. Monsanto cross-appeals, arguing that the district court lacked jurisdiction to enforce the settlement agreement and that, even assuming jurisdiction was proper, parol evidence of any prior agreement as to pension benefits should not have been considered by the district court. We affirm the enforcement of the settlement agreement and denial of back pension benefits, but reverse the denial of attorney's fees.

On June 29, 1995, Gilbert brought suit against Monsanto under the Age Discrimination in Employment Act ("ADEA") and the Missouri Human Rights Act ("MHRA"). Gilbert's attorney, David C. Howard, presented a written settlement demand to Monsanto on March 6, 1997, which requested a lump sum payment and immediate access to pension benefits. William Weidle, Jr., attorney for Monsanto, orally accepted the demand on behalf of his client. Howard then drafted an agreement which included the lump sum payment but made no mention of Gilbert's pension benefits. Monsanto's in-house counsel, Marty Zucker, signed the agreement, and the document was then retained by Weidle and never signed by Gilbert. Howard testified at a hearing on a motion to enforce the settlement agreement that he did not include a pension benefits provision in the agreement because Weidle told him that Gilbert was entitled to accelerated pension benefits regardless of the settlement. The parties later advised the district court of their settlement agreement, and the court dismissed the case with prejudice subject to its retention of jurisdiction to enforce the agreement.

Monsanto paid Gilbert the lump sum they had agreed upon. However, Gilbert failed to receive payments under his pension, so he moved the district court to enforce the settlement agreement. On June 3, 1998, the court found that the parties' oral agreement included early receipt of pension benefits and ordered the parties to work out a payment schedule. One month later, the court denied Gilbert's motion for attorney's fees as a prevailing party under the ADEA. Then, in its order of August 17, 1998, the court found that an amendment to the pension plan resulted in Gilbert being entitled to higher monthly payments under the plan than if he had immediately begun receiving payments following the settlement. These higher payments, the court reasoned, fully compensated Gilbert for the missed payments. The parties attempted to appeal the district court's rulings twice before, but we dismissed those appeals as premature. Gilbert filed the current appeal on March 1, 1999, and Monsanto subsequently filed its cross-appeal.

## I.

Monsanto challenges the current appeal as untimely, arguing that the district court entered a final judgment on August 17, 1998. However, in dismissing a prior appeal on February 26, 1999, we held that the final judgment for purposes of appeal was entered on February 5, 1999. "'The law of the case' doctrine generally requires that a decision on a former appeal be followed in any subsequent proceedings in that court or a lower court unless evidence subsequently introduced is substantially different or the decision is clearly erroneous and works manifest injustice." South Cent. Enters., Inc. v. Farrington (In re Progressive Farmers Ass'n), 829 F.2d 651, 655 (8th Cir. 1987). Monsanto points to no error or injustice, and we see none. Therefore, Gilbert's March 1, 1999 notice of appeal of the district court's judgment was well within the 30-day requirement of 28 U.S.C. § 2107 (1994).

## II.

Monsanto further argues that the district court was without jurisdiction to enter its order enforcing the terms of the parties' oral settlement agreement. We review questions of subject matter jurisdiction de novo. See Jenisio v. Ozark Airlines, Inc. Retirement Plan for Agent and Clerical Employees, 187 F.3d 970, 972 (8th Cir. 1999).

Federal courts do not have automatic ancillary jurisdiction to enforce a settlement agreement arising from federal litigation. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 380 (1994). "Ancillary jurisdiction to enforce a settlement agreement exists only 'if the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal--either by . . . a provision "retaining jurisdiction" over the settlement agreement [ ] or by incorporat[ion of] the terms of the settlement agreement in the order.'" Miener v. Missouri Dept. of Mental Health, 62 F.3d 1126, 1127 (8th Cir. 1995) (quoting Kokkonen, 511 U.S. at 381).

Monsanto contends that the district court only retained jurisdiction over the parties' "executed" settlement agreement and thus lacked jurisdiction to enter a judgment based on an oral agreement. The parties' Stipulation of Dismissal stated: "The 'confidential Settlement Agreement and Release' executed between the parties is herein incorporated by reference. Furthermore, it is stipulated that the parties agree that this Court shall retain jurisdiction to enforce the terms of the Settlement Agreement and Release." Since the stipulation referred to an "executed" settlement agreement, and since no such agreement was actually executed because Gilbert failed to sign it, Monsanto argues that the court did not have jurisdiction to consider Gilbert's motion to enforce the parties' agreement.

The district court determined that it retained jurisdiction to rule on Gilbert's motion to enforce the parties' settlement agreement, reasoning as follows:

> Although it appears that the language of the stipulation contemplated the Court's having jurisdiction to enforce a specific written agreement, it is clear that no written agreement existed. The Court believes that there was an oral settlement agreement in this case, and that [the Court] does retain jurisdiction under the terms of that stipulation to enforce the terms of the settlement agreement.

This statement was made in the context of the district court's careful analysis of the record before it and strong reliance on credibility issues. We hold on the record before us that the district court did not clearly err in finding that there was an oral agreement or in concluding that it retained jurisdiction over the enforcement of the settlement agreement, regardless of its form.

## III.

We turn now to the district court's interpretation of the settlement agreement, which we review de novo. See Grant County Sav. & Loan Ass'n v. Resolution Trust Corp., 968 F.2d 722, 724 (8th Cir. 1992). Our analysis is guided by "general rules of contract construction." NLRB v. Superior Forwarding, Inc., 762 F.2d 695, 697 (8th Cir. 1985).

## A.

Monsanto argues that Gilbert ratified the written settlement agreement by accepting the lump sum payment. Therefore, Monsanto contends, the district court's consideration of extrinsic evidence of the parties' agreement that Gilbert have immediate access to his pension benefits violated the parol evidence rule. However, Gilbert argues facts to support the conclusion that Monsanto should be equitably

estopped from making its parol evidence argument. Gilbert asserts that his attorney did not put a pension benefits provision in the settlement agreement because Weidle, Monsanto's attorney, said it was unnecessary since Gilbert already held the right to immediate access to his pension benefits. The district court agreed with Gilbert's assertion, crediting Howard's testimony over Weidle's. Since Gilbert reasonably and detrimentally relied on Weidle's statement, Monsanto is equitably estopped from denying it. See Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 659 (8th Cir. 1992) ("The principle of estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny that representation."). Monsanto's parol evidence argument must therefore fail, because it runs contrary to Weidle's assurance that Gilbert could obtain immediate access to his pension benefits without any language in the settlement agreement to that effect.

**B.**

Gilbert contends he should be awarded back pension benefits for the approximately sixteen months Monsanto improperly failed to pay them. Gilbert argues that such payment is necessary to make him whole. See Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1065 (8th Cir. 1988) ("Under the ADEA the district court must tailor the remedy to make the injured party whole.").

Monsanto points out that when Gilbert actually began receiving pension benefits, the plan had been amended such that Gilbert received greater monthly benefits than he would have been receiving had he begun to receive his pension at the appropriate time. Therefore, Monsanto argues, Gilbert's lost payments are compensated by the higher monthly payments, and any award of back benefits would constitute a windfall.

Gilbert counters by citing Leftwich v. Harris-Stowe State College, 702 F.2d 686 (8th Cir. 1983), and Dyer v. Hinky Dinky, Inc., 710 F.2d 1348 (8th Cir. 1983), in

support of the proposition that the higher pension payments cannot serve to offset the missed payments. In both cases, the plaintiffs lost income due to improper actions by their employers, but made more money in later pay periods than they would have under the status quo before the wrongdoing. In Leftwich, also an ADEA case, the defendant was allowed an offset from the plaintiff's lost salary based on income the plaintiff received from other employment. See 702 F.2d at 693. The calculation was made on a yearly basis, with no offset allowed in an earlier year for wages earned by the plaintiff in a later year that exceeded the plaintiff's lost income for that year. See id. at 693-94. Gilbert argues that just as the defendant in Leftwich could not offset a loss in an earlier year with payments received in a later one, Monsanto should not be able to offset missed payments in earlier months with higher payments in later months. In support of a pay-period-by-pay-period mode of analysis, Gilbert cites Dyer, a case decided under the Vietnam Era Veterans' Readjustment Assistance Act. The plaintiff was promoted to a higher paying position within his company after suffering an income loss due to having been assigned an incorrect seniority date. See Dyer, 710 F.2d at 1349-50. There we found that the best way to make the plaintiff whole was to adopt a pay-period-by-pay-period approach, preventing the defendant from offsetting losses incurred by the plaintiff in earlier pay periods by wages the plaintiff earned in later pay periods in excess of that to which the plaintiff was entitled under the Act. See id. at 1351-52.

In both Leftwich and Dyer, this court found that the defendants could not offset the earlier losses against gains realized by the plaintiffs in later periods. In those cases, however, the later increase in income was in every sense collateral to the loss. Gilbert, unlike the plaintiff in Leftwich, received his higher payments directly from the defendant, Monsanto. Also, while the plaintiff in Dyer received higher pay as compensation for performing a different job, the higher pension payments that Gilbert eventually began receiving were meant to satisfy the same obligation owed to him when the payments should have commenced. Therefore, Monsanto's higher payments are

not collateral to Monsanto's duty to pay and should accordingly offset the missed payments plus interest.

The district court properly denied Gilbert back benefits, finding him fully compensated by the increased payments he is now receiving. To dispose of the pension benefit issue, the district court ordered that Gilbert be re-employed for one day so he could be covered by the amended plan. Monsanto then provided Gilbert with the figures for the various options available to him, including a lump sum payment, a Single Life Annuity under which the payments would terminate at his death, or a 50% Joint & Survivor Annuity under which his spouse would continue to receive fifty percent of his pension benefits should he predecease her.

Under the 50% Joint & Survivor Annuity, the re-employment at the later date made Gilbert eligible for monthly pension benefits of at least $1443.76,[1] as compared to $1314.52 had the benefits commenced in May 1997 when Monsanto agreed to provide them. By receiving benefits based on a pension commencement date of October 1, 1998, there was about a sixteen month period when Gilbert received no benefits. If he had been paid his pension at the lower amount for this period, these benefits would have totaled $21,032.32. He argues that as the benefits actually commenced October 1, 1998, when he was over fifty, he would have to live out most of his life expectancy before receiving what he lost during the sixteen-month period.

As stated above, Monsanto simply argues that because of the increased monthly benefits, an award of back benefits would result in a windfall. The district court agreed with Monsanto that the increased monthly benefit "compensates plaintiff for the delay in initiating the payments." The court continued that if Gilbert believed that the

---

[1]Gilbert's benefits as of June 1, 1998 would have been $1443.76. The district court pointed out that the amount would have to be re-calculated for an October 1, 1998 commencement date.

increased monthly benefit did not repay the back benefits quickly enough, he had the option of accepting the lump sum payment. While the court did not mention that if Gilbert did not live long enough to recoup the omitted payments, his spouse would be paid benefits at one-half the rate, this is further support for its reasoning.

We are persuaded by the district court's reasoning and affirm its denial of back benefits for the approximately sixteen months Monsanto wrongfully denied them.

**IV.**

Gilbert also appeals the district court's denial of attorney's fees, arguing that he is entitled to such fees as a prevailing party under the ADEA. The ADEA incorporates 29 U.S.C. § 216(b), see Cova v. Coca-Cola Bottling Co., 574 F.2d 958, 962 (8th Cir. 1978), which provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (1994). We review de novo whether a litigant is a prevailing party. See St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis, 96 F.3d 323, 330 (8th Cir. 1996). We review a district court's award of attorney's fees for abuse of discretion; however, "a district court's discretion to deny attorney's fees to a prevailing party is narrow." Id. at 331. For the reasons that follow, we reverse the district court's denial of Gilbert's request for attorney's fees.

Monsanto is correct that "attorneys' fees may not be recovered by a prevailing party in the absence of statutory authority." American Fed'n of Musicians, Local 2-197 v. The St. Louis Symphony Society, 203 F.3d 1079, 1081 (8th Cir. 2000) (citing Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975)). Monsanto suggests that Gilbert may not receive attorney's fees in this case because he is simply "prevailing on a contract claim," relying heavily on Arvinger v. Mayor and City Council of Baltimore, 31 F.3d 196 (4th Cir. 1994). In Arvinger, the plaintiff

brought an action seeking enforcement of the agreement he had reached with the defendant in settlement of the plaintiff's civil rights claim. See id. at 197. However, he did not prevail in the enforcement action and was consequently denied fees on appeal. See id. at 201-02. Arvinger stands for the proposition that a prevailing civil rights plaintiff cannot simply carry over prevailing party status to an enforcement action in which the plaintiff did not prevail and be awarded attorney's fees by virtue of success in the first suit. See id. at 202.

In contrast to the plaintiff in Arvinger, however, Gilbert prevailed in both his initial action as well as in his action to enforce the parties' settlement agreement. It is well settled that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). In the present action, Gilbert's relief, which consisted of the enforcement of his right to receive benefits, materially altered the relationship between him and Monsanto. Monsanto denied that it had agreed to pay accelerated pension benefits, and the issue had to be litigated to a successful conclusion by Gilbert. Gilbert is therefore a prevailing party. Monsanto counters by arguing that Gilbert has only prevailed on a contract claim, as his ADEA claim was dismissed with prejudice. However, "monitoring the defendant's compliance with court orders and enforcing the remedy are generally compensable as part of the underlying case." Jenkins v. Missouri, 127 F.3d 709, 717 (8th Cir. 1997).

Since Gilbert is a prevailing party, we must next determine whether the district court abused its discretion in denying him attorney's fees. As we have stated previously, "[p]revailing plaintiffs should ordinarily recover fees unless special circumstances would make such an award unjust." Id. at 716. The district court found such special circumstances in the present case, noting that "plaintiff's counsel agreed to dismiss this lawsuit before obtaining a fully executed agreement containing the agreed-upon terms." The court failed to acknowledge, however, that even if Gilbert

-10-

had signed the agreement, he still would have had to seek enforcement because the agreement still would be silent as to his right to pension benefits. However, this silence would not be due to any fault of Gilbert, but due to Monsanto's attorney's misrepresentations as to Gilbert's right to receive benefits in the *absence* of a settlement agreement. Therefore, we conclude that the district court abused its discretion in denying Gilbert's request for attorney's fees.

We make no award, however, for fees incurred in this appeal.

\* \* \*

For the foregoing reasons, we affirm the district court's enforcement of the settlement agreement and denial of back pension benefits, but reverse its denial of attorney's fees to Gilbert. We remand for further proceedings consistent with this opinion.

BEAM, Circuit Judge, concurring and dissenting.

I concur in the court's opinion except for the award of attorney fees. In my view, this is a contract claim for which fees are not awardable.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-