# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3229

_____

| | |
|---|---|
| Steven L. Jenisio; Candace Jenisio, | * |
| | * |
| Appellants, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Ozark Airlines, Inc. Retirement Plan for | * |
| Agent and Clerical Employees; | * |
| Retirement Plan for Machinists of Trans | * |
| World Airlines; Trans World Airlines, | * |
| Inc., a Delaware corporation, | * |
| | * |
| Appellees. | * |

_____

Submitted: June 14, 1999
Filed: August 13, 1999

_____

Before HANSEN and MAGILL, Circuit Judges, and JONES,* District Judge.

_____

MAGILL, Circuit Judge.

Steven and Candace Jenisio brought an action under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 - 1461, seeking benefits

_____

*The Honorable John B. Jones, Senior United States District Judge for the District of South Dakota, sitting by designation.

under two pension plans. The district court[1] dismissed the action, concluding that the Railway Labor Act (RLA), 45 U.S.C. § 184, divested the court of subject matter jurisdiction because the Jenisios' claims were subject to the RLA's mandatory arbitration provision. We affirm.

## I.

Steven Jenisio was hired by Ozark Airlines, Inc. (Ozark) in December 1971 and was continuously employed by Ozark until it merged with Trans World Airlines, Inc. (TWA) in 1986. Mr. Jenisio continued to work for TWA until he suffered a heart attack in 1989.

Prior to the Ozark-TWA merger Mr. Jenisio participated in the Ozark Airlines, Inc. Retirement Plan for Agent and Clerical Employees (Ozark Plan). The labor relationship between Ozark and the International Association of Machinists and Aerospace Workers (IAM), the union to which Mr. Jenisio belonged, was governed by the Ozark-IAM collective bargaining agreement (Ozark-IAM CBA). When the Ozark-TWA merger commenced, the Ozark Plan was terminated. At that time Mr. Jenisio was completely vested in the Ozark Plan. After the merger Mr. Jenisio became a participant in the Retirement Plan for Machinists of Trans World Airlines, Inc. (TWA Plan). The labor relationship between TWA and IAM was governed by the TWA-IAM collective bargaining agreement (TWA-IAM CBA). Candace Jenisio, Mr. Jenisio's wife, is a beneficiary under both the Ozark Plan and the TWA Plan.

In February 1991 Mr. Jenisio applied for long-term disability benefits under the TWA Plan. He was awarded benefits under the TWA Plan, but less than the amount he requested. Mr. Jenisio also applied for benefits under the Ozark Plan. This

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

-2-

application was denied.

The Jenisios brought this action under ERISA against the Ozark Plan, the TWA Plan, TWA, (collectively, Appellees) and John Hancock Mutual Insurance Company,[2] seeking to (1) increase the benefits award under the TWA Plan and (2) obtain benefits under the Ozark Plan. Appellees filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the claims were subject to mandatory binding arbitration under the RLA.[3] The district court agreed, concluding that the RLA divested it of subject matter jurisdiction over the Jenisios' complaint because each of their claims was subject to the RLA's mandatory arbitration provision. The Jenisios timely appealed.[4]

## II.

We review the question of subject matter jurisdiction de novo. See Clarinda Home Health v. Shalala, 100 F.3d 526, 528 (8th Cir. 1996).

The RLA requires air carriers and unions to establish a system board of adjustment (the Board) to resolve all "disputes . . . growing out of . . . the interpretation or application of agreements concerning rates of pay, rules, or working conditions."

---

[2]John Hancock Mutual Insurance Company was dismissed by stipulation of the parties.

[3]We reject the argument that the district court erred in failing to convert the motion to dismiss into a motion for summary judgment when it considered the text of the Plans and the CBAs. A district court may consider documents on a motion to dismiss where, as here, the plaintiffs' claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents. See Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

[4]Mr. Jenisio died on October 21, 1998, while this appeal was pending. This claim is now for Mrs. Jenisio's survivor's benefits, though the issue on appeal--the applicability of the RLA's arbitration requirement--is unaffected.

45 U.S.C. § 184. These disputes, which are commonly referred to as "minor disputes," "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and [the Board] established by the employer and the unions." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253 (1994). The Board has mandatory, exclusive, and comprehensive jurisdiction over minor disputes, and the remedies provided by the Board are the "complete and final means" for settling minor disputes. Brotherhood of Locomotive Eng'rs v. Louisville & Nashville R.R., 373 U.S. 33, 39 (1963).

The RLA's arbitration requirement applies to pension disputes such as those presented here if the pension plan is (1) itself a CBA or (2) maintained pursuant to a CBA. See Hawaiian Airlines, 512 U.S. at 256 (holding disputes "grounded in the CBA" are subject to arbitration under RLA); Air Line Pilots Ass'n Int'l v. Delta Air Lines, Inc., 863 F.2d 87, 93 (D.C. Cir. 1988) (holding RLA's arbitration requirement applies where pension plan "maintained pursuant to a [CBA]" (quotation marks omitted)).[5] We have said that a party shoulders a "relatively light burden" in establishing exclusive arbitral jurisdiction under the RLA. Schiltz v. Burlington N.R.R., 115 F.3d 1407, 1414 (8th Cir. 1997). In fact, there is a presumption that disputes are minor and thus arbitrable. See id. (holding that if doubts arise as to type of dispute at issue, court should construe dispute as minor); Air Line Pilots, 863 F.2d at 93 (holding that in RLA case doubts about arbitrability of issues should be resolved in favor of coverage).

---

[5]ERISA, which was enacted after the RLA, does not affect our analysis of the RLA's mandatory arbitration provision. See Bowe v. Northwest Airlines, Inc., 974 F.2d 101, 103 (8th Cir. 1992) ("ERISA was not intended to, nor did it, preempt the mandatory arbitration provision of the [RLA].").

## A. The Ozark Plan

Mrs. Jenisio argues that the claim with respect to the Ozark Plan is not subject to the RLA's arbitration requirement because the Ozark Plan was not collectively bargained for and, thus, is not a CBA. However, the Ozark Plan need not be a CBA itself; if it was maintained pursuant to a CBA it is subject to the RLA's arbitration requirement. See, e.g., id. at 95; Printing Specialties & Paper Prods. Union Local 680 v. Nabisco Brands, Inc., 833 F.2d 102, 105 (7th Cir. 1987) .

A pension plan is maintained pursuant to a CBA when it is incorporated by reference in that CBA. See Air Line Pilots, 863 F.2d at 94. However, "mere mentioning" of the pension plan in the CBA does not constitute incorporation by reference. Id. Whether the Ozark Plan was maintained pursuant to the Ozark-IAM CBA turns on whether the references to the Ozark Plan in the CBA effectively incorporate the Ozark Plan or merely mention it.

The Ozark-IAM CBA does more than merely mention the Ozark Plan. Rather, it sets forth material amendments to and elements of the Ozark Plan: how benefits are calculated, the size of the annual benefit, the age an employee must reach to obtain his benefits, and provisions for early retirement, among others. See Ozark-IAM CBA Art. 18. Including such fundamental components of the Ozark Plan in the Ozark-IAM CBA demonstrates a clear relationship between the Plan and the CBA and supports the conclusion that the Plan was incorporated by reference in the CBA. See Printing Specialties, 833 F.2d at 105.

Not only does the Ozark-IAM CBA set forth material components of the Ozark Plan, the Ozark Plan itself references the Ozark-IAM CBA. The Ozark Plan defines the term "employee" as "any Agent or Clerical employee employed by the Company who is a member of the bargaining unit covered by the collective bargaining agreement between the Company and [IAM]." Ozark Plan § 1.7. While such a reference may not

itself be enough to demonstrate that the Ozark Plan was maintained pursuant to the Ozark-IAM CBA, when considered in conjunction with the fundamental changes to the Plan set forth in the CBA, it further supports the conclusion that the Ozark Plan was to be interpreted with reference to the Ozark-IAM CBA.

Further, the language in the Ozark-IAM CBA used to amend the Ozark Plan indicates that Ozark and IAM bargained for the amendments to the Plan, if not for the Plan in its entirety. See Ozark-IAM CBA Art. 18 ("WHEREAS, the Company and Union desire to amend, for the employees covered by this Agreement, the Company's General Pension Plan."). This is persuasive evidence that the Ozark Plan was maintained pursuant to the Ozark-IAM CBA. See Air Line Pilots, 863 F.2d at 94-95 (noting fact that parties negotiated and bargained for pension plan terms supports finding that plan was incorporated by reference in CBA); Printing Specialties, 833 F.2d at 105 (same).

Given these facts, we are convinced that the Ozark Plan was incorporated by reference in the Ozark-IAM CBA and, thus, that the Ozark Plan was maintained pursuant to the CBA. Because the claim with respect to the Ozark Plan is a minor dispute subject to the RLA's arbitration provisions, the district court correctly concluded that it lacked subject matter jurisdiction over this claim.

## B. The TWA Plan

Mrs. Jenisio acknowledges that the claim with respect to the TWA Plan is a minor dispute. Nonetheless, she argues that this claim is not subject to the RLA's arbitration requirement because the TWA-IAM CBA exempts disputes related to the TWA Plan from this requirement.

While two other circuits have indicated that parties may exempt pension plans from the RLA's arbitration requirement via contract, we have held that parties to a CBA

may not circumvent the RLA's arbitration requirement (and thereby vest subject matter jurisdiction in the district court) by contractual agreement. Compare Bowe, 974 F.2d at 103-04 ("Parties to an agreement cannot create federal subject matter jurisdiction by consent.") with Air Line Pilots, 863 F.2d at 91 (holding RLA's arbitration requirement is matter of contract; parties may in CBA exempt pension plan from this requirement), and Bonin v. American Airlines, Inc., 621 F.2d 635, 639 (5th Cir. 1980) (same). Because the claim with respect to the TWA Plan is a minor dispute, the district court correctly determined that it lacked subject matter jurisdiction over this claim.

## III.

Accordingly, we AFFIRM the district court's dismissal for lack of subject matter jurisdiction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.